IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MATT YAMASHITA,<br><br>        Plaintiff,<br><br>    vs.<br><br>LG CHEM, LTD., *et al.*,<br><br>        Defendants. | Case No. 20-cv-00129-DKW-RT<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

After an electronic vaping device exploded in his mouth, Plaintiff Matt Yamashita filed this product liability lawsuit against LG Chem, Ltd., (a South Korean company) which allegedly manufactured the device's lithium-ion battery; LG Chem's wholly-owned marketing subsidiary LG Chem America, Inc. (a Delaware company headquartered in Georgia); CoilART, which manufactured the vaping device; and Gearbest.com and Wa Fa La, Inc., the entities which sold or distributed the vaping device.  LG Chem and LG America now move to dismiss this action for lack of personal jurisdiction.  Dkt. Nos. 23, 30.

Because neither LG Chem nor LG America can be deemed "essentially at home" in Hawaii, this Court cannot assert general personal jurisdiction over either. *E.g.*, *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).  Nor can this Court exercise specific personal jurisdiction over LG Chem or LG America, as Yamashita argues, merely because the LG Defendants placed the subject battery into the "stream of

commerce" with the expectation that it might be swept into the State of Hawaii.  *See, e.g.*, *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).  Accordingly, the motions to dismiss, Dkt. Nos. 23, 30, are GRANTED.

## FACTUAL & PROCEDURAL BACKGROUND

### A.    The Pertinent Parties

Defendant LG Chem, Ltd. (LG Chem), is organized under the laws of South Korea and has its headquarters and principal place of business in Seoul, South Korea. Dkt. No. 18, ¶ 2; Dkt. No. 23-2, ¶ 3.  LG Chem has never had an office in Hawaii; has never been registered to do business in Hawaii; has no employees that reside or work in Hawaii; and has never owned or leased any real property in Hawaii.  Dkt. No. 23-2, ¶¶ 4–9.

LG Chem is the parent company of its wholly-owned marketing subsidiary, Defendant LG Chem America, Inc., (LG America) (collectively, "LG Defendants"). Dkt. No. 34-4 at 12; Dkt. No. 29-3.  LG America is a Delaware corporation that has its principal place of business in Georgia.  Dkt. No. 18, ¶ 4; Dkt. No. 30-2, ¶ 3.  LG America is not registered to do business in Hawaii, does not lease any real property in Hawaii, does not have an office in Hawaii, and does not have any employees who work in Hawaii.  Dkt. No. 30-2, ¶¶ 4–6.

### B.    The Alleged Injury

Yamashita alleges that on December 3, 2017, he was in Hawaii using an e-

cigarette vaping device when it exploded in his mouth, shattering his teeth, burning his hand, and causing lacerations and scarring. Dkt. No. 18, ¶¶ 52–54.[1] Yamashita received the vaping device itself from his friend, who had purchased the device on the internet at Gearbest.com. Dkt. No. 18, ¶¶ 7, 49. The vaping device was allegedly manufactured by Defendant CoilART and sold or distributed by Defendants Gearbest.com and Wa Fa La, Inc., (WFL). Dkt. No. 18, ¶¶ 7–11, 14, 48. The battery inside the device was an "LG MG1 2850 mAh 10A and/or LG HG2 3000 mAh 20A" lithium-ion battery, also known as an 18650 lithium-ion cell (Subject Battery), which Yamashita had purchased from an unnamed "retailer of lithium-ion batteries" in Hawaii. Dkt. No. 18, ¶¶ 3, 50–51; *see also* Dkt. No. 23-2, ¶ 14.

Yamashita alleges the LG Defendants manufactured the Subject Battery and, when it failed to meet certain quality control standards, it was then sold to another entity and "rewrapped" for sale. Dkt. No. 18, ¶¶ 3–5, 14, 44–47.[2] In fact, Yamashita

---

[1] "Vapes, vaporizers, vape pens, hookah pens, electronic cigarettes (e-cigarettes or e-cigs), and e-pipes are some of the many terms used to describe electronic nicotine delivery systems (ENDS)." *See Vaporizers, E-Cigarettes, and other Electronic Nicotine Delivery Systems (ENDS)*, U.S. FOOD & DRUG ADMINISTRATION (FDA) (June 3, 2020), https://www.fda.gov/tobacco-products/products-ingredients-components/vaporizers-e-cigarettes-and-other-electronic-nicotine-delivery-systems-ends (last visited July 21, 2020). These battery-operated products "use an 'e-liquid' that may contain nicotine, as well as varying compositions of flavorings," and the liquid is "heated to create an aerosol that the user inhales." Some of these devices look like conventional cigarettes, cigars, or pipes, while others "resemble pens or USB flash drives" and larger devices, such as "tank systems or mods," bear little or no resemblance to cigarettes. *Id.*

[2] According to Yamashita, the LG Defendants have used the practice of "rewrapping" to make additional profits by "selling a number of its lower quality batteries"—*i.e.*, "batteries that fail to meet quality control standards or have some other inherent issue or manufacturing defect"—to "other purported 'manufacturers' or distributors of lithium-ion batteries. Those other entities then take the lower-quality LG battery, replace the exterior wrapping, and sell the battery under a

readily admits he "has not been able to verify the identities of the companies, individuals, and/or third-parties that were involved in (1) the re-wrapping and distribution of the lithium-ion battery, (2) the ultimate retail[er] . . . of the lithium-ion battery, and (3) the design[er], manufacture[r], and distribut[or] of the vape [device] and its component parts . . ." *Id.* at ¶ 14.

Yamashita asserts six counts: (1) strict liability; (2) negligence/gross negligence; (3) unjust enrichment; (4) negligent misrepresentation; (5) fraudulent misrepresentation; and (6) unfair or deceptive acts & practices in violation of Haw. Rev. Stat. § 480-1 *et seq.* Dkt. No. 18 at 21–44.

## C.   LG Chem's Contacts With Hawaii

LG Chem's authorized representative states that the company "has never distributed or sold any LG MG1 or HG2 18650 lithium-ion cells" (the specific battery at issue) "or any other 18650 lithium-ion cells in Hawaii." Dkt. No. 23-2, ¶ 10.   LG Chem "manufactures 18650 lithium-ion cells for use in specific applications by sophisticated companies." *Id.* at ¶ 11.   It "does not design or manufacture" such batteries for "sale to individual consumers as standalone batteries"; "does not distribute, advertise, or sell [these batteries] directly to consumers"; and has "never authorized any manufacturer, wholesaler, distributor,

---

different product/manufacturer name.  It is only upon a precise analysis of the physical geometry and chemical composition of the battery that this scheme can be uncovered . . ."  Dkt. No. 18, ¶¶ 43–45.

retailer, or re-seller to distribute, advertise or sell [these batteries] directly to consumers as standalone batteries." *Id.* at ¶ 12.  As relevant here, LG Chem "never conducted any business with [Defendants] CoilART, Gearbest.com, or [WFL]," and has "never authorized" these entities "to sell or distribute LG-brand lithium-ion batteries for any purpose," including use in "vaping devices." *Id.* at ¶¶ 14–15.  With respect to the particular batteries at issue—LG Chem's lithium-ion 18650 batteries—LG Chem "has no relationship with any retailer or distributor in Hawaii" for the sale of these batteries, "does not advertise" these batteries "in Hawaii"; and "has never sold or shipped" such a battery to "any customer located in Hawaii." *Id.* at ¶ 17.

Rather than rebut these points, Yamashita alleged facts that are either unrelated to the Subject Battery or concern LG Chem's global reach and involvement in the U.S. market.  According to Yamashita, LG Chem "produces and places into the stream of commerce lithium-ion batteries" for consumer electronics, Dkt. No. 29 at 2, including power tools, phones, laptops, electric vehicles (EVs), and energy storage systems (ESS) used for storing solar energy.  *See* Dkt. Nos. 29-4, 29-5, 29-6, 29-7, 29-8, 29-9, 29-10.[3]  Consumer electronic manufacturers such as Apple,

---

[3]To illustrate his point with regard to EVs, Yamashita attaches to his opposition brief several exhibits and further asserts that LG Chem "supplies batteries for Tesla vehicles in China"; "will begin supplying the same for Lucid Motors this year"; supplies lithium-ion batteries "for the Chevy Bolt EV, which was first unveiled in 2009"; has partnered with General Motors to "mass produce" lithium-ion cells for electric vehicles at a "new plant in Ohio"; and is "the supplier for Ford Focus EV batteries."  *See* Dkt. Nos. 29 at 9, 29-33, 29-34, 29-35, 29-36, 29-37.

Hewlett-Packard, Dell, Nokia, LG Electronics, General Motors, Ford Motor Company, Cadillac, Hyundai, Kia, and Chevrolet allegedly use LG lithium-ion batteries in their products, and many of these products are available for purchase at U.S. retail giants, such as Best Buy, Target, and Walmart.  Dkt. No. 18, ¶ 20(e)–(g); Dkt. No. 29 at 8–9.[4]  Yamashita also notes that LG Chem lithium-ion batteries are used in electric bicycles, or e-bikes, and Hawaii-based companies, such as Segway Maui and Ridesmart Maui, sell e-bikes that use 48-volt batteries with certain LG Chem lithium-ion cells.  *See* Dkt. Nos. 29-38, 29-39.  In addition, dealerships in Hawaii sell the Vespa Elettrica, which contains a 48-volt lithium-ion battery manufactured by LG Chem.  Dkt. No. 29-40 at 3.

As for lithium-ion batteries in particular, Yamashita asserts that U.S. Customs data indicates LG Chem has delivered at least 262 shipments to the port of Honolulu, with less than 100 of them containing lithium-ion batteries of some kind.  Dkt. No. 29 at 2–3; Dkt. No. 29-11.  Yamashita is uncertain whether or not the batteries in these shipments were similar to the Subject Battery.  Dkt. No. 29 at 3 n.1.

In a separate industry, Yamashita points to the fact that LG Chem has attended

---

[4]Yamashita's citation to *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-CV-00043, 2015 WL 2412467, at *24 (W.D.N.C. May 21, 2015), does not support his assertion that the LG Defendants placed their "*batteries* on the shelves of U.S. retail giants such as Walmart, Target, and Best Buy."  Dkt. No. 18, ¶ 20(e); Dkt. No. 29 at 8.  Rather, the court in *Celgard* simply noted plaintiffs had alleged that "[consumer electronic] devices are widely sold and distributed in North Carolina, including by retailers like Best Buy, Target, and Walmart."  *Celgard*, 2015 WL 2412467, at *24.

the Hawaii Energy Conference and Exhibition and, in 2018, LG Chem sent its director of sales to the conference.  Dkt. No. 29-14 at 5–6; Dkt. No. 29-15 at 3; Dkt. No. 29-16.  Yamashita further alleges that LG Chem has partnered with four solar energy system providers based in or that do business in Hawaii, Dkt. No. 29-17, Dkt. No. 29-19, Dkt. Nos. 29-20; Dkt. No. 29-21 at 1–2; Dkt. No. 29-27 at 1, as well as a company based in Canada, which provides batteries for ESS products in Hawaii and California, *see* Dkt. No. 29-25.  These five companies incorporate LG Chem lithium-ion batteries into their products and services.[5]  *See* Dkt. No. 29 at 3–6. Further, in November 2017, SMA America and LG Chem toured the U.S. to provide installation training for LG Chem batteries used in ESS products, and the tour stopped in Hawaii for three days.  *See* Dkt. No. 29-21 at 1–2.

Yamashita also avers that LG Chem, through its website, advertises its lithium-ion solar energy storage systems "directly to consumers."  Dkt. No. 29 at 5.[6]

---

[5]Yamashita also states that LG Chem "announced that its lithium-ion batteries would be used by SolarEdge, which does business in Hawaiʻi."  Dkt. No. 29 at 5 (citing Dkt. No. 29-22).  But the exhibit Yamashita relies upon does not support this proposition.  The exhibit is an article in which "SolarEdge" is mentioned once.  The article simply states that one of LG Chem's batteries "is compatible with SolarEdge's StorEdge™, which is a DC coupled storage solution based on a single inverter for both PV and storage."  Dkt. No. 29-22 at 3.  The article does not state that SolarEdge, in fact, uses LG Chem's batteries, nor is there any indication from the article that SolarEdge does business in Hawaii.  Similarly, although Yamashita attaches another article, Dkt. No. 29-23, stating that PetersenDean Roofing & Solar (the "largest privately held U.S. solar and roofing company") announced it is "pairing the StorEdge systems with . . . LG Chem batteries," nothing in the article indicates, as Yamashita argues, that PetersenDean operates in Hawaii.  Dkt. No. 29 at 5.  Nonetheless, even if Yamashita's evidence established all of these facts, this would not change the Court's personal jurisdiction conclusions below.
[6]*See Home Battery*, LG CHEM: ESS BATTERY DIVISION, https://www.lgessbattery.com/us/home-battery/intro.lg (last visited July 20, 2020).

Yamashita points out that within 124.3 miles of Maui, Hawaii, there are at least 9 companies certified to install LG residential energy storage units (RESUs) and training for four additional companies is in progress. *See* Dkt. No. 29 at 5.[7] Yamashita then notes that in the installation manual for the RESU10H, the limited warranty permits an end-user to file a claim with the installer for events that occur in the "United States." *See* Dkt. No. 29-24, ¶¶ 2-4, 7.

On still another topic, Yamashita relies on LG Chem's involvement in antitrust and patent litigation. Yamashita asserts that in 2013, a group of U.S. consumers from across the country, including Hawaii, filed a class action in the United States District Court for the Northern District of California, alleging that LG Chem, among other named battery manufacturers, engaged in price-fixing for consumer products, such as power tools, tablets, and phones, which contain lithium-ion batteries. Dkt. No. 29-29 at 1; *id.* at ¶¶ 309, 354, 374. LG Chem and LG America later settled for $39 million. Dkt. No. 29-30 at 1, 8. In October 2013, LG Chem also pled guilty to conspiracy to fix the prices of lithium-ion batteries sold in the United States for use in laptops and admitted that the sales of these batteries totaled nearly $3.36 million. Dkt. No. 29-31 at 1–4. Yamashita also notes that Celgard, LLC, sued LG Chem and LG America in North Carolina for infringement of the

---

[7] *See Home Battery: Where to Buy*, LG CHEM: ESS BATTERY DIVISION, https://www.lgessbattery.com/us/home-battery/installer-search.lg (last visited July 20, 2020).

patent on technology used in its rechargeable lithium-ion batteries. Dkt. No. 29 at 7–8; *see Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-CV-00043- MOC-DC, 2015 WL 2412467, at *1 (W.D.N.C. May 21, 2015). In that case, the LG Defendants described their participation in U.S. markets, noting that $ 0.76 million per day, or $278 million per year, in revenue is derived from the sale of batteries in the United States. *Celgard*, 2015 WL 2412467, at *24.

Lastly, Yamashita asserts LG Chem ships lithium-ion batteries to Green Battery Technologies for sale to AA Portable Power Corp., dba Batteryspace.com. Dkt. No. 29-1, ¶ 36. AA Portable Power Corp describes itself as a "[j]oint venture of several battery and charger manufacturers," and "specializ[es] in all kinds of rechargeable batteries and chargers." Dkt. No. 29-41. On the website, customers can purchase individual and standalone LG Chem 18650 battery cells, as well as battery packs containing those cells.[8] Dkt. No. 29 at 10.

## D.    LG America's Contacts With Hawaii

LG Chem has several wholly-owned subsidiaries in the United States, one of which is Defendant LG America, whose business activities are listed as "sales and trading." Dkt. No. 34-4 at 12; Dkt. No. 30-2, ¶¶ 7, 9 (stating LG America "focuses on sales and distribution only" and "does not have any manufacturing plants"). In

---

[8] *See* AA PORTABLE POWER CORP, https://www.batteryspace.com/18650seriesli-ioncells.aspx (last visited July 20, 2020).

discovery responses from other battery-related litigation, Dkt. No. 34 at 3, LG America stated, *inter alia*, that it "facilitated payment from [a] Texas customer to [LG Chem]" for HE4 batteries, Dkt. No. 34-5 at 3, 7, and it "played a role in the facilitation of transactions of LG Batteries to 3 customers in the United States" and its "involvement in said transactions was limited to the facilitation of the payment from the customer, to LG Chem, Ltd." Dkt. No. 34-6 at 11. In interrogatory responses, however, LG America also stated that with respect to the period 2014 to June 19, 2017, it "has not entered in any such contracts with individuals and/or entities that are located in the State of Hawaii." *Id.* at 14.

As it pertains to this case, according to LG America's authorized representative, the company has "never conducted any business with [Defendants] CoilART, Gearbest.com, or [WFL]," and has "never authorized" these entities "to sell or distribute LG-brand lithium-ion batteries for any purpose," including use in "vaping devices." Dkt. No. 30-2, ¶¶ 10–11. Moreover, LG America "has never distributed or sold any products, including lithium-ion cells, in Hawaii." *Id.* at ¶ 12.

Yamashita again relies on *Celgard*, in which the court noted that, according to a declaration LG America attached to its motion to dismiss, "[LG America] is responsible for marketing [LG Chem] petrochemicals, information and electronic materials, and batteries to customers in the United States. [LG America] also acts as a product distributor for [LG Chem]'s customers in the U.S. and is responsible

for sales and program management to U.S. customers, but has no direct involvement with the manufacture of [LG Chem] products and does not share any officers with [LG Chem]." *Celgard*, 2015 WL 2412467, at *26 (citations omitted); Dkt. No. 34 at 6. Yamashita further asserts, as noted above, that LG America and LG Chem were named as defendants in a 2013 class action filed by U.S. consumers alleging price-fixing related to consumer products that contain lithium-ion batteries,[9] and that the LG Defendants settled with the class members, including those in Hawaii, for $39 million. Dkt. No. 29-30 at 1, 8; *accord* Dkt. No. 34-9.[10]

Yamashita contends LG Chem and LG America are "one and the same in marketing their products." Dkt. No. 34 at 3. In support, Yamashita points to an LG Chem YouTube channel he claims the LG Defendants "share." Dkt. No. 34 at 3. Yamashita also relies on a memorandum from the U.S. Department of Commerce detailing an "Antidumping Duty Investigation" under the Tariff Act of 1930, 19 U.S.C. § 1202 *et seq.*, which concerned sales of dioctyl terephthalate (DOTP) that LG Chem made through LG America for "less-than-fair-value," Dkt. No. 34-7 at 1, 26. DOTP is a chemical compound Yamashita proffers is used for "coatings" on batteries. Dkt. No. 34 at 4.

---

[9] *See* Dkt. No. 29-29, at 1; *id.* at ¶¶ 309, 354, 374; *accord* Dkt. No. 34-8; Dkt. No. 34 at 7–8.
[10] Yamashita misrepresents that LG America pled guilty to conspiracy to fix prices for lithium-ion battery cells sold in the U.S. for use in laptops and that these sales totaled nearly $3.36 million. Dkt. No. 34 at 7–8. LG America is not a party to the plea agreement to which Yamashita cites, Dkt. No. 34-10, nor is it even mentioned.

**E.     Procedural Background**

Yamashita initially filed this action in Hawaii state court on December 2, 2019.  Dkt. No. 1-2.  On March 20, 2020, LG Chem timely removed the case to federal court, invoking diversity of citizenship under 28 U.S.C. § 1332 as the basis for this Court's subject matter jurisdiction.  Dkt. No. 1, ¶¶ 2, 9–11.  LG Chem immediately moved to dismiss the action for lack of personal jurisdiction, Dkt. No. 6, but that motion was soon rendered moot when Yamashita filed his first amended complaint (FAC) on April 17, 2020, Dkt. Nos. 18, 19.

When LG Chem objected to Yamashita's requests for jurisdictional discovery, the parties agreed to resolve the issue by submitting letter briefs to the Magistrate Judge.  Dkt. Nos. 16, 17.  LG Chem then moved to dismiss the FAC for lack of personal jurisdiction.  Dkt. No. 23.  Shortly thereafter, the Magistrate Judge ruled that Yamashita was not entitled to jurisdictional discovery because he had failed to establish a "colorable basis" for exercising personal jurisdiction over LG Chem. Dkt. No. 27 at 10.  Yamashita did not object to this discovery order within the 14-day period under Local Rule 74.1(a) and, in fact, no such objection has been filed.

LG America subsequently filed its own motion to dismiss for lack of personal jurisdiction.  Dkt. No. 30.  Yamashita filed separate responses to LG Chem and LG America's motions to dismiss and included in each response a "counter motion to continue" the matter in order to "pursue formal jurisdictional discovery."  *See* Dkt.

No. 29 at 24; Dkt. No. 34 at 22.  The LG Defendants' motions to dismiss, Dkt. Nos. 23, 30, have been fully briefed by all concerned and are now ripe for resolution.

### STANDARD OF REVIEW

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction [pursuant to Federal Rule of Civil Procedure 12(b)(2)], the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011); *see Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1020 (9th Cir. 2017).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *CollegeSource*, 653 F.3d at 1073 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).

In evaluating the evidence, "uncontroverted allegations in [the] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff]'s favor." *Brayton Purcell*, 606 F.3d at 1127 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)).  But when a complaint and an affidavit conflict, the "plaintiff cannot 'simply rest on the bare allegations of its complaint,'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)), because courts do "not assume the

truth of allegations in a pleading which are contradicted by affidavit." *Id.* (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *CollegeSource*, 653 F.3d at 1073.

## DISCUSSION

The LG Defendants contend Yamashita has failed to establish that this Court has either general or specific personal jurisdiction over them. Dkt. No. 23-1 at 1, 6; Dkt. No. 30-1 at 1, 5. Yamashita asserts that personal jurisdiction exists in this case based principally on the theory that the LG Defendants "placed lithium-ion batteries into the stream of commerce . . . with the expectation and knowledge that they would be sold to users and consumers in Hawaiʻi." *See* Dkt. No. 34 at 10; Dkt. No. 29 at 12. Because that overly-broad theory has been explicitly rejected by binding authority, the Court concludes that personal jurisdiction cannot obtain over either of the LG Defendants.

## I.    Personal Jurisdiction: General Legal Principles

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed.R.Civ.P. 4(k)(1)(A)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Hawaii's long-arm statute authorizes its courts to exercise personal jurisdiction "to the extent permitted" by the United States Constitution. *See Cowan v. First Ins. Co.*, 608 P.2d 394, 399 (Haw. 1980) (citing

- 14 -

Haw. Rev. Stat. § 634-35); *accord In re Complaint of Damodar Bulk Carriers, Ltd*., 903 F.2d 675, 679 (9th Cir. 1990). Therefore, the Court must decide whether exercising jurisdiction over the LG Defendants "comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125.

Due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). As relevant here,[11] courts may exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Depending on the defendant's affiliations with the forum, courts may exercise "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017) (quoting *Goodyear*, 564 U.S. at 919).

General jurisdiction over a defendant is appropriate only when the defendant's affiliations with the forum state "are so 'continuous and systematic' as to render

---

[11]Yamashita does not argue that either of the LG Defendants waived or consented to personal jurisdiction. *See InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 901 (9th Cir. 2018).

them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State," *Bristol-Myers*, 137 S. Ct. at 1780, or the claim "aris[es] from dealings entirely distinct from" the defendant's activities within the forum. *Daimler*, 571 U.S. at 127 (quoting *Int'l Shoe*, 326 U.S. at 318).

Specific jurisdiction obtains when a nonresident has only engaged in "some single or occasional acts" in the forum, *Daimler*, 571 U.S. at 137 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U. S. 408, 414 n.8 (1984)), but "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Bristol-Myers*, 137 S.Ct. at 1780 (citation and internal quotation marks omitted; emphasis in original).

Yamashita asserts that jurisdiction over the LG Defendants is proper "[u]nder either [the general or specific jurisdiction] analysis." Dkt. No. 29 at 12; Dkt. No. 34 at 9. Although Yamashita makes no attempt to elaborate on his conclusory argument that general jurisdiction is appropriate, the Court will address the merits of his assertion. In addressing whether general or specific jurisdiction is appropriate in this case, as set forth below, the Court assesses each of the LG Defendants' contacts with Hawaii on an individual basis. *See, e.g. Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.");

*Bristol-Myers*, 137 S. Ct. at 1783.

## II.      LG Chem is Not Subject to Personal Jurisdiction in Hawaii

### A.      General Personal Jurisdiction – LG Chem

This Court lacks general personal jurisdiction over LG Chem because its affiliations with Hawaii are not so "continuous and systematic" that the company is "essentially at home" in Hawaii. *Daimler*, 571 U.S. at 127. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (brackets omitted) (quoting *Goodyear*, 564 U.S. at 919. "The 'paradigm' forums in which a corporate defendant is 'at home,'" as repeatedly stated by the Supreme Court, "are the corporation's place of incorporation and its principal place of business." *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 137); *Goodyear*, 564 U.S. at 924. Only "in an 'exceptional case'" will general jurisdiction be appropriate in any other forum. *BNSF*, 137 S.Ct. at 1558 (quoting *Daimler*, 571 U.S. at 139 n.19).

It is undisputed that LG Chem is not organized under Hawaii law and does not maintain its principal place of business in Hawaii. Nor is this an "exceptional case" where LG Chem's operations in Hawaii may be deemed "so substantial and of such a nature as to render the corporation at home in [Hawaii]." *BNSF*, 137 S. Ct.

- 17 -

at 1558 (quoting *Daimler*, 571 U.S. at 139 n.19).  The Supreme Court has made such a finding in only one case, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952), which the Court observed "remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation[.]"  *Daimler*, 571 U.S. at 129 (quoting *Goodyear*, 564 U.S. at 927–28).  In *Perkins*, general jurisdiction existed over a Philippine corporation sued in Ohio, where the company's president relocated due to World War II and "kept an office, maintained the company's files, and oversaw the company's activities."  *Daimler*, 571 U.S. at 129–30 (citing *Perkins*, 342 U. S. at 448).  Because "Ohio was the center of the corporation's wartime activities," *id.* at 130 n.8, "Ohio was the corporation's principal, if temporary, place of business," *id.* at 130 (citation omitted).

Here, LG Chem has no office, staff, or any other physical presence in Hawaii.  Nor does LG Chem conduct any operations from Hawaii.  Yamashita's evidence regarding the wide range of *consumer electronics* (allegedly containing LG Chem batteries) that have been purchased in Hawaii by Hawaii consumers is irrelevant to the general jurisdiction analysis.  LG Chem does not have any involvement with these devices being advertised, distributed, or sold in Hawaii; and the Supreme Court has expressly held that the "stream-of-commerce" theory "is an inadequate basis for the exercise of general jurisdiction."  *Goodyear*, 564 U.S. at 920, 927; *id.* at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise

of jurisdiction over a claim unrelated to those sales.").

LG Chem's direct contacts with Hawaii—sending 262 shipments of any kind to Honolulu's port and partnering with a handful of solar energy companies that do business in Hawaii—does not begin to approximate the operations of a corporation that is "at home" in Hawaii, *i.e.,* "comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11. Contrary to Yamashita's approach, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *BNSF*, 137 S. Ct. at 1558 (quoting *Daimler*, 571 U.S. at 139 n.20). "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20. "A corporation," like LG Chem, "that operates in many places can scarcely be deemed at home in all of them." *Id.*; *see* Dkt. No. 34-2 at 15; Dkt. No. 34-4. LG Chem merely "doing business" in Hawaii is not enough. *See Daimler*, 571 U.S. at 139 n.20. Indeed, the Supreme Court has rejected the exercise of general jurisdiction when a corporation's affiliations with the forum were far greater than what Yamashita has presented here. *See, e.g.*, *BNSF*, 137 S. Ct. at 1559 (no general jurisdiction despite railroad's ownership of "over 2,000 miles of railroad track and more than 2,000 employees" in the forum); *Helicopteros*, 466 U.S. at 411, 416–18 (no general jurisdiction over a company that "purchased helicopters (approximately 80% of its fleet), spare parts, and accessories" from another company in the forum).

- 19 -

Accordingly, Yamashita has not made a prima facie showing that LG Chem is subject to general personal jurisdiction in Hawaii.

## B.    Specific Personal Jurisdiction – LG Chem

LG Chem is not subject to the Court's specific personal jurisdiction because the claims alleged do not arise out of contacts that LG Chem itself created with Hawaii.  *See Walden*, 571 U.S. at 284.  For a court to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State."  *Id*.  "[P]hysical presence in the forum is not a prerequisite to jurisdiction," but "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."  *Id.* at 285 (citations omitted).  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"  *Id*. at 283–84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 775 (1984) (internal quotation marks omitted)).  Two overarching principles drive this "defendant-focused" inquiry.  *Id.* at 284.

> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State.  *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985) . . .
>
> Second, [the] "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Walden*, 571 U.S. at 284–85.  In other words, specific jurisdiction cannot obtain based upon "a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff."  *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U. S. at 475).  With these principles in mind, courts in this jurisdiction evaluate specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802.  If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King*, 471 U.S. at 476–78).  Yamashita falters on the first two prongs: LG Chem does not have sufficient contacts with Hawaii, nor is there the requisite nexus between Yamashita's claims and what few contacts LG Chem has with Hawaii.

### 1.      Purposeful Direction or Purposeful Availment

With respect to the first prong of the test for specific jurisdiction, Yamashita has not shown that LG Chem "purposefully availed itself of the [Hawaii] market," *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (plurality) (product liability action), or that LG Chem engaged in any actions "purposefully directed" at Hawaii, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (product liability action).  In contending otherwise, Yamashita's theory is that LG Chem "plac[ed] into the stream of commerce lithium-ion batteries, including the [Subject Battery]," Dkt. No. 18, ¶¶ 3, 59, "with the expectation and knowledge that they would be sold to users and consumers in Hawaiʻi."  Dkt. No. 34 at 10; Dkt. No. 29 at 12.  That sweeping proposition is directly in conflict with well-established precedent.

"The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987)).  "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id*.; *see Asahi*, 480 U.S. at 105, 112 (Japanese tire valve manufacturer's "mere awareness . . . that

- 22 -

the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce" held insufficient to permit California court's adjudication of Taiwanese tire manufacturer's cross-complaint); *J. McIntyre*, 564 U.S. at 878, 886 (holding that a metal-shearing machine manufacturer based in England that engaged an independent distributor to sell its machines across the U.S. was not subject to personal jurisdiction in New Jersey where the plaintiff was injured while using one of the company's machines).

"*Asahi* requires 'something more' than the mere placement of a product into a stream of commerce." *Holland*, 485 F.3d at 459 (quoting *Asahi*, 480 U.S. at 111); *see also J. McIntyre*, 564 U.S. at 882 ("The defendant's transmission of goods [to the forum State] permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). Examples of "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve [or target]" the forum State include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112; *see also Daimler*, 571 U.S. at 128 n.7 (collecting cases). Yamashita's stream-of-commerce theory, by contrast, is plagued by several defects.

First, Yamashita has not shown "something more" than an unadorned stream-of-commerce theory; namely, there is no evidence of some special Hawaii-related design, advertising, advice, marketing, or anything else that might support the notion that LG Chem targeted Hawaii.  And it is undisputed that with respect to the particular batteries at issue, LG Chem "does not advertise" or otherwise solicit business in Hawaii; "has no relationship with any retailer or distributor in Hawaii" for the sale of these batteries; and "has never sold or shipped" such a battery to "any customer located in Hawaii."  Dkt. No. 23-2, ¶¶ 10–17.  Although the Subject Battery somehow ended up in Hawaii through some unidentified distribution system, there is no evidence LG Chem "create[d], control[ed], or employ[ed] the distribution system that brought its [Subject Batteries] to [Hawaii]." *Asahi*, 480 U.S. at 112.

Second, LG Chem's conduct in selling its batteries to manufacturers for use in, *inter alia*, electric vehicles and consumer electronic devices sold throughout the U.S., as well as LG Chem's alleged U.S. price-fixing scheme, Dkt. No. 29-29 at 1; *id.* at ¶¶ 309, 354, 374, at most, constitutes action directed at all fifty states across the U.S.[12]  This high level of generality is meaningless because "it is [LG Chem]'s purposeful contacts with [Hawaii], not with the United States, that alone are

---

[12]These contacts, moreover, are entirely unrelated to Yamashita's asserted claims; that is, Yamashita's claims do not arise out of, or relate to, LG Chem's sale of batteries for incorporation into electric vehicles, power tools, phones, laptops, solar storage systems, or RESUs.  *See infra* Section II.B.2.

relevant." *J. McIntyre*, 564 U.S. at 886. "[A] finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi*, 480 U.S. at 112 (emphasis in original). Put simply, "[t]hese facts may reveal an intent to serve the U.S. market, but they do not show that [LG Chem] purposefully availed itself of the [Hawaii] market." *J. McIntyre*, 564 U.S. at 886.

Lastly, insofar as LG Chem may have manufactured the Subject Battery and sold it to another entity, which then "rewrapped" it, *see* Dkt. No. 18, ¶¶ 43–46, and to the extent LG Chem allegedly ships lithium-ion batteries to an intermediary entity that sells the batteries to Batteryspace.com, Dkt. No. 29 at 10; Dkt. No. 29-1, ¶ 36, these facts plainly demonstrate that the batteries were advertised, distributed, and eventually brought to Hawaii by an entity other than LG Chem. This is precisely the sort of fortuitous, "'unilateral activity' of a third party that 'cannot satisfy the requirement of contact with the forum State.'" *See Walden*, 571 U.S. at 286, 291 (citation omitted); *see also J. McIntyre*, 564 U.S. at 883 ("[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."). Therefore, because "it is the defendant, *not the plaintiff or third parties*, who must create contacts with the forum State," *Walden*, 571 U.S. at 291, the lion's share of Yamashita's evidence has no place in this case.[13]

---

[13]Yamashita's evidence regarding less than 100 shipments of some kind of lithium-ion batteries LG Chem delivered to the port of Honolulu does not command a different outcome, given that Yamashita has not shown that Hawaii was the final destination for these batteries, and Yamashita

Accordingly, Yamashita has not satisfied the first prong because he has not shown that LG Chem *itself* engaged in any suit-related conduct "purposefully" designed to serve or target Hawaii.

### 2.    Claims Arising out of, or Related to, Forum Activities

The only apparent asserted contacts that LG Chem has itself directly established with Hawaii consist of sending its director of sales to an energy conference in Hawaii; partnering with solar system providers based in Hawaii; providing ESS battery installation training in Hawaii for three days; certifying Hawaii companies to install LG RESUs; and using a website to advertise lithium-ion solar energy storage products for consumers.  These contacts, nonetheless, are unavailing under the second prong of the specific jurisdiction test because this lawsuit does not arise out of, or relate to, these forum activities.

As noted, for a court "to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"  *Bristol-Myers*, 137 S. Ct. at 1780 (emphasis in original) (quoting *Daimler*, 571 U.S. at 127).  A "but for" test applies in this context, meaning "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of

---

has only a hunch that these batteries might be the type that is the subject of this lawsuit.  Dkt. No. 29 at 3 n.1.  In contrast, LG Chem has submitted admissible, unrebutted Rule 12(b)(2) evidence that LG Chem "has never distributed or sold any [of the Subject Batteries] or any other 18650 lithium-ion cells in Hawaii."  Dkt. No. 23-2, ¶ 10.

action." *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 715 F.3d 716, 742 (9th Cir. 2013) (citations and internal quotation marks omitted).

Yamashita's product liability claims concern a defective lithium-ion battery in his vaping device. "But for" the above-referenced solar energy activities of LG Chem in Hawaii, the possibility of Yamashita's particular injury occurring would not change. As such, there is no nexus between Yamashita's specific claims and LG Chem's solar power endeavors in Hawaii. For the same reason, Yamashita's particular claims have no connection to LG Chem's sale of batteries to other manufacturers for incorporation into electric vehicles, power tools, phones, or laptops, nor is there any such connection to LG Chem's alleged antitrust violations. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S.Ct. at 1781. To conclude otherwise (as Yamashita urges), Dkt. No. 29 at 3–10, 22, would require this Court to endorse the sort of "loose and spurious form of general jurisdiction" that the Supreme Court has explicitly admonished courts for applying when assessing *specific* jurisdiction. *Bristol-Myers*, 137 S. Ct. at 1781. In short, "[w]hat is needed—and what is missing here—is a connection between [Hawaii] and the specific claims at issue." *Id*.

Because Yamashita has failed to sustain his burden with respect to the first or

second prong of the specific personal jurisdiction test, the Court need not, and does not reach the issue of whether the exercise of jurisdiction would be reasonable under the third prong. *Picot v. Weston*, 780 F.3d 1206, 1213 n.2 (9th Cir. 2015). Accordingly, this Court lacks personal jurisdiction over LG Chem.

## III.    LG America is Not Subject to Personal Jurisdiction in Hawaii

Yamashita's case for personal jurisdiction over LG America is even weaker than that for LG Chem.  Yamashita's basis for personal jurisdiction over LG America is largely based upon *LG Chem's* conduct and *LG Chem's* Hawaii contacts. *See* Dkt. No. 34 at 2–8.  The record reveals no evidence that LG America was involved in any of LG Chem's Hawaii contacts.  Because LG America lacks any purposeful, direct contacts of its own with Hawaii, personal jurisdiction cannot lie.

"It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other[.]" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1071 (9th Cir. 2017) (quoting *Holland*, 485 F.3d at 459).  Yamashita has made no effort to establish either a prima facie alter ego theory or agency theory as a basis for imputing LG Chem's contacts to LG America. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) ("To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to

- 28 -

disregard [their separate identities] would result in fraud or injustice." (citation and internal quotation marks omitted)); *Williams*, 851 F.3d at 1024-25 ("[U]nder any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities.").  As such, LG America lacks even a single direct contact with Hawaii.  That alone is enough to end the personal jurisdiction inquiry.  But even if all of LG Chem's contacts could be imputed to LG America, for the same reasons stated above, these contacts would provide no basis for either general or specific personal jurisdiction over LG America.

The only additional information that Yamashita points to with respect to LG America does not lead to a different result.  This information includes a payment for HE4 batteries LG America facilitated between a Texas customer and LG Chem;[14] LG America's role in the facilitation of transactions for LG Batteries to three customers in the U.S.;[15] and an "Antidumping Duty Investigation" under the Tariff Act of 1930 for "less-than-fair-value" exports of DOTP.[16]  This information does nothing to move the needle in favor of finding that LG America—a company that is not incorporated in and does not maintain its principal place of business in Hawaii— is nonetheless "essentially at home" in Hawaii for purposes of exercising general personal jurisdiction.  *Daimler*, 571 U.S. at 127.  Nor can specific jurisdiction obtain

---

[14]Dkt. No. 34-5 at 2–3, 7.
[15]Dkt. No. 34-6 at 11.
[16]Dkt. No. 34-7 at 1.

based on this information.  First, the battery transactions LG America facilitated are not purposeful contacts *with Hawaii*; these transactions merely evidence an "intent or purpose to serve [or target]" States other than Hawaii or the U.S. as a whole. *Asahi*, 480 U.S. at 112; *see J. McIntyre*, 564 U.S. at 886.  Second, Yamashita's claims do not arise out of, or relate to, sales LG Chem made through LG America for "less-than-fair-value" exports of the chemical compound DOTP.  *See Bristol-Myers*, 137 S. Ct. at 1781.  Therefore, the following remains unrefuted: LG America "has never distributed or sold any products, including lithium-ion cells, in Hawaii." Dkt. No. 30-2, ¶ 10.[17]

Accordingly, Yamashita has failed to make a prima facie showing that there is any basis for the Court to exercise personal jurisdiction over LG America.

## IV.   Yamashita's Request for Jurisdictional Discovery

That leaves Yamashita's request for a continuance to pursue jurisdictional discovery.  Dkt. No. 29 at 24; Dkt. No. 34 at 22.  That request is denied.

Jurisdictional discovery is appropriate only "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)

---

[17]With respect to LG America, Yamashita has again failed to carry his burden under the first or second prong of the specific personal jurisdiction test, and thus, there is no need for the Court to consider whether the exercise of jurisdiction would be reasonable under the third prong.  *Picot*, 780 F.3d at 1213 n.2.

(quoting *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).  Before jurisdictional discovery is warranted, generally a plaintiff must first establish a "colorable basis" for personal jurisdiction, meaning the plaintiff must produce at least "some evidence" tending to support personal jurisdiction. *See, e.g.*, *Chapman v. Krutonog*, 256 F.R.D. 645, 649 (D. Haw. 2009) (citation omitted) (collecting cases).  "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).  The same is true "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

There are some jurisdictional discovery motions that are close calls.  This is not one of them.  It is clear that nothing Yamashita could discover about the LG Defendants' contacts with Hawaii would subject them to personal jurisdiction in Hawaii.  The problem is Yamashita's misconceived legal theory.  From the outset, Yamashita has been fatally wedded to the incorrect understanding that, under the Due Process Clause, "[a] 'regular flow' of goods into the forum State, *by itself*, is

- 31 -

sufficient" for a forum to assert personal jurisdiction over a foreign defendant.  Dkt. No. 29 at 18; Dkt. No. 34 at 16 (emphasis added); Dkt. No. 18, ¶¶ 3, 5, 20.

Moreover, Yamashita has made only a naked request for jurisdictional discovery with respect to LG Chem.  Dkt. No. 29 at 24–25.  He has not articulated any of the specific facts he hopes to elicit from further discovery; any reason to suspect these facts sought exist; or how these sought-after facts will enable him to oppose LG Chem's motion to dismiss.  A request for discovery "based on little more than a hunch that it might yield jurisdictionally relevant facts" is not enough.  *Boschetto*, 539 F.3d at 1020.  With respect to LG America, Yamashita has merely proffered that because LG America "facilitates transactions for [LG Chem] and . . . its products are on the shelves of retail giants like Wal-Mart and Best Buy, and in the cars sold by auto manufacturers such as GM and Ford," Yamashita "should be entitled to discover what contracts [LG America] has involved itself in with respect to intentional nationwide distribution of lithium-ion batteries."  Dkt. No. 34 at 23.  But that information is not specific to Hawaii; it is not relevant to the particular subject matter of this lawsuit; and it flies "in the face of specific denials made by the defendants."  *Pebble Beach*, 453 F.3d at 1160.

In summary, Yamashita has merely sought to establish personal jurisdiction over the LG Defendants by marshaling random pieces of information remotely connected to LG lithium-ion batteries.  This information either concerns third

parties' Hawaii contacts; has nothing do with Hawaii, in particular; and/or is entirely unrelated to Yamashita's claim that he was injured while using a vaping device containing an 18650 lithium-ion battery.   Yamashita has obviously taken a "spaghetti approach" and heaved the universe of information on LG batteries against the wall in the hopes that something would stick.   *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).   The Court has sorted through the noodles and found Yamashita wanting.

## CONCLUSION

For the reasons set forth herein, Defendants' motions to dismiss the first amended complaint for lack of personal jurisdiction, Dkt. Nos. 23, 30, are GRANTED.   Plaintiff's counter-motion for jurisdictional discovery, Dkt. No. 29, 34, is DENIED.

IT IS SO ORDERED.

DATED: July 31, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Matt Yamashita v. LG Chem, Ltd., et al.*; Civil No. 20-00129-DKW-RT; **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**